**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ROHAN MYERS,** **Petitioner,** | **04 Civ. 9678 (SCR) (LMS)** |
| **- *against* -** | |
| **WILLIAM PHILLIPS, Superintendent of Green Haven Correctional Facility** **Respondent.** | **REPORT AND RECOMMENDATION** |

**TO: THE HONORABLE STEPHEN C. ROBINSON, UNITED STATES DISTRICT JUDGE**

Pro se petitioner Rohan Myers ("Petitioner") petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. §2254. Petitioner challenges his conviction in the County Court, Westchester County, on December 11, 2001, for the crime of murder in the second degree. Petition ("Pet.") at ¶¶ 1–5. On February 4, 2002, Petitioner was sentenced as a violent felony offender to an indeterminate term of state imprisonment of 18 years to life for the crime of murder in the second degree. Respondent's Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus ("Resp't Mem.") at 1.

Petitioner seeks habeas relief on three grounds: (1) that he was denied equal protection under the law when the state trial court denied Petitioner's Batson challenge; (2) that he was denied a fair trial when the state trial court erroneously admitted into evidence after-the-fact acts and then failed to instruct the jury that those acts were irrelevant to depraved indifference; and (3) that he was denied a fair trial when the trial court failed to instruct the jury with sufficient

specificity on how to assess the circumstantial evidence regarding recklessness. Pet. at ¶13.

For the following reasons, I conclude, and respectfully recommend that Your Honor should conclude, that the Petitioner's habeas petition should be denied *in toto*.

## BACKGROUND

### The Crime

Petitioner shot Christine Ferguson in the face at point blank range on August 1, 1998. Petitioner shortly thereafter fled to Jamaica. T: 1554[1] Ferguson lived with Petitioner in the basement apartment of a two-family house located in Mount Vernon, New York. T: 1579-80. Ferguson's brother found her body on August 3, 1998, two days after her death. Resp't Mem. Ex. C at 8.[2] Ferguson died as the result of the single gun shot wound, which fatally damaged her spinal cord and brain stem. Resp't Mem. Ex. C at 8.

On August 1, 1998, Petitioner and Ferguson were engaged in a verbal altercation, which led to Ferguson pulling a gun on the Petitioner. Resp't Mem. Ex. C at 9. Petitioner claims he was attempting to disarm the victim when the gun misfired, killing Ferguson. Resp't Mem. Ex. C at 9.

---

[1] The numerical notations preceded by the letter "T" refer to the corresponding pages of the trial transcript. According to the Assistant District Attorney assigned to this matter, only four of the five volumes of Petitioner's state court trial transcript could be located and were provided to this court for docketing. See Docket ## 7-10; see also Docket #12, Letter from Westchester County District Attorney confirming missing volume of state court proceeding. Volume 4, which spans from pages 1684 to 2279, appears to cover the middle to latter portion of the state court trial. The sections of the transcript pertinent to Petitioner's claim - notably the portions involving the jury voir dire and accompanying Batson challenge, and the proposed jury instructions - are located within the transcript volumes provided to the Court. Where possible, this Court will cite to the transcript pages. Where infeasible, the Court will cite to the Respondent's Memorandum of Law and the Exhibits contained therein.

[2] For the purposes of clarity, I note that these citations are to the handwritten pagination of the exhibits, not the page numbers of the documents contained within the exhibit.

A ballistics expert testified that the weapon could only have been fired if the trigger had been pulled, and that it was impossible for the gun just to "go off." T: 2420–36.

Subsequent to firing the gun, Petitioner hid the firearm outside, received a haircut, purchased food, and also purchased a plane ticket to Jamaica, his country of origin, where he remained for two years. Resp't Mem. at 22-23. Police officers from the Mount Vernon Police Department, with the permission of the City of Mount Vernon, the State Department, and the Jamaican government, traveled to Jamaica in June of 2000, to apprehend Petitioner. See Resp't Mem. Ex. D at 14. Petitioner was arrested and returned to the United States for trial. A jury convicted the Petitioner of second degree murder, pursuant to N.Y. PENAL LAW §125.25, in the County Court, Westchester County (Adler, J., sitting with a jury) on December 11, 2001. Petitioner was sentenced to an indeterminate term of state imprisonment of 18 years to life.

**Jury Selection**

During jury selection, the Petitioner's trial counsel made a Batson challenge to the prosecutor's use of his peremptory challenges. T: 1097. During the first round of jury selection, the prosecutor exercised two peremptory challenges, one against prospective juror V.C., and another against prospective juror F.M.[3] T: 659. During the third round, the prosecutor peremptorily challenged, among others, prospective juror P.G., T: 1095, and M.R. T: 1096.[4] After the prosecutor's use of a peremptory challenge on juror M.R., Petitioner's counsel raised a

---

[3] To protect the identity of the prospective jurors, the jurors are identified by their first and last initials.

[4] In addition to these challenges, the prosecutor also used peremptory challenges for a prospective woman juror in the first round, T: 659, a prospective male juror in the second round, T: 772, two female jurors and two male jurors in the third challenge round. T: 1092, 1093.

Batson challenge, claiming that the prosecutor used his peremptory challenges in a discriminatory manner, resulting in the only three Jamaican women being struck from the jury.[5] After giving the prosecutor the opportunity to address the racial composition of the jury[6], the trial court denied the Batson challenge, ruling that Petitioner did not establish a prima facie Batson violation based upon the alleged discriminatory use of peremptory strikes against jurors based on their national origin. T: 1100–01.

**Jury Instructions**

Prior to the completion of trial, Petitioner's counsel submitted proposed jury instructions, which sought to have the court inform the jury of, *inter alia*, the limited use of certain evidence when considering whether the Petitioner acted in a wanton or depraved manner. Resp't Mem. Ex. B at 13-14. Petitioner's counsel proposed that the jury be instructed not to consider Petitioner's acts after shooting Ferguson when deliberating on the element of depraved indifference to human life as a component of second degree murder. Resp't Mem. Ex. B at 13-14. Specifically, Petitioner's counsel proposed that if the victim was already dead, or if there was no way that medical attention could have saved her, then the jury should not consider after-the-fact evidence when deciding whether the Petitioner acted with depraved indifference. See Resp't Mem. Ex. B at 14. Additionally, Petitioner requested that the trial judge instruct the jury that in order to infer

---

[5] Though not completely clear from the transcript itself, Petitioner's counsel posited that juror F.M., struck by the prosecutor during the first round, may have been a Jamaican woman. T: 1097. Petitioner's counsel also claimed that jurors P.G. and M.R. were Jamaican women. Id.

[6] During this time, the prosecutor noted that he used several peremptory challenges on Caucasian men and women, as well as on several African Americans, and one juror who appeared to be of Asian nationality. T: 1099. The trial judge informed the prosecutor that he was not yet being required to supply the race-neutral explanation for his use of the peremptory strikes dictated by the Batson decision. See 476 U.S. 79, 95 (1986).

recklessness from circumstantial evidence, they must find that such an inference is the only inference possible from the circumstantial acts that have been proven. See Resp't Mem. Ex. B at 11-12.

The trial judge submitted the following charges to the jury: murder in the second degree, including depraved indifference to human life, N.Y. PENAL LAW §125.25, manslaughter in the second degree, reckless death, N.Y. PENAL LAW § 125.15(1), and criminally negligent homicide, N.Y. PENAL LAW § 125.10. T: 2656. The trial court instructed the jury on the charges as follows:

> [W]hen reckless conduct is engaged in under circumstances evincing a depraved indifference to human life, the law regards that conduct as so serious, too egregious, as to be the equivalent of intentional conduct.
>
> Conduct evincing a depraved indifference to human life, is much more serious and blameworthy than conduct which is merely reckless. It is conduct-wise, beyond reckless, is so wanton, so deficient in moral sense and concern, so devoid of or regard for life or lives of others as to be equal and blameworthiness to intentional conduct which produces the same result [sic].
>
> In determining whether a person's conduct evince[s] a depraved indifference to human life, a jury would have to decide whether the circumstances surrounding his or her reckless conduct, when objectively viewed, made it so uncaring, so callous, so dangerous and so inhuman as to demonstrate an attitude of total and utter disregard for the life of the person or persons in danger.

T: 2657-58. The trial court also instructed the jury regarding direct and circumstantial evidence and conduct from which a consciousness of guilt may be formed and the use of prior bad act evidence. T: 2636-37; 2652-56. The trial judge did not include either of the Petitioner's proposed jury instructions regarding the pertinence of after-the-fact evidence to depraved indifference or the value of circumstantial evidence when considering recklessness.

**Post-trial Proceedings**

Petitioner appealed his conviction to the New York State Appellate Division, Second Department, which affirmed his conviction on November 17, 2003. People v. Myers, 1 AD3d 532 (2d Dept 2003). The Second Department specifically denied Petitioner's Batson claim and held that the jury verdict was not against the weight of the evidence. Myers, 1 A.D.3d at 532-33.

Pursuant to N.Y. CRIM PRO. LAW § 460.20, Petitioner applied for leave to file an appeal to the New York Court of Appeals. Petitioner only requested appellate review of the first two grounds raised in his appeal, i.e. Petitioner's Batson claim, and the admission of after-the-fact evidence and the trial judge's accompanying decision not to instruct the jury that such evidence should not be considered when deliberating on the element of depraved indifference. Resp't Mem. Ex F and G.

The New York Court of Appeals denied Petitioner's application for leave to appeal the Appellate Division's order. People v. Myers, 1 N.Y.3d 631 (2004). Petitioner neither petitioned for a writ of certiorari in the United States Supreme Court, nor collaterally challenged his conviction in the New York State courts. Resp't Mem. at 2. Petitioner, acting pro se, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 on October 6, 2004.

## DISCUSSION

### A. Standard of Review

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614, 621 (1998). To be granted a writ of habeas corpus from a federal district court, a petitioner in state custody must comply with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §2254. Under §2254, all state remedies must be exhausted before a federal court may consider a petition for a writ of habeas corpus. 28 U.S.C. §2254(b)(1), (c); see

also O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). In the interests of comity and deference, state courts should have the first opportunity to address and correct alleged violations of a state prisoner's federal rights. See Coleman v. Thompson, 501 U.S. 722, 731 (1991); see also Jones v. Keane, 329 F.3d 290, 294 (2d Cir. 2003).

A habeas petitioner has one year from the date his or her conviction becomes final to file a habeas petition in federal court. 28 U.S.C. §2244(d)(1). This limitations period begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. §2244(d)(1)(A). Petitioner's application for leave to file an appeal in the New York Court of Appeals was denied on February 26, 2004. People v. Myers, 1 N.Y.3d 631 (2004). Petitioner timely filed the instant petition on October 6, 2004.

**B. Petitioner's Habeas Claims**

**1. Batson Violation**

Petitioner alleges that the state trial court judge wrongfully determined that his counsel failed to establish a prima facie Batson violation when the prosecutor struck three prospective jurors, all of whom appeared to be of Jamaican nationality. Pet. at ¶13. Petitioner's habeas petition will only be granted if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S.

362, 413 (2000). A state court decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." Id.

In the present case, the state court judge's determination that Petitioner's counsel failed to establish a prima facie Batson violation is neither contrary to, nor an unreasonable application of, clearly established federal law, because there is no clear authority as to whether national origin discrimination can be used as the predicate for a prima facie Batson violation. Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that Petitioner's habeas claim on the alleged Batson violation should be denied.

Pursuant to the Supreme Court's decision in Batson v. Kentucky, 476 U.S. 79, 93 (1986), the party challenging the use of his or her opponent's peremptory challenges bears the initial burden of proof to establish a prima facie showing of purposeful racial discrimination. In Batson, the Court enumerated the standards for establishing such a prima facie violation as including a showing that: (1) the challenger is a "member of a cognizable racial group" and that the opponent exercised peremptory challenges to remove prospective jurors who are also from that cognizable group, and (2) that the facts and relevant circumstances raise an inference of discrimination. 476 U.S. at 96. A "cognizable racial group" is any group that is a "recognizable, distinct class, singled out for different treatment under the laws, as written or applied." Id. (citing Castaneda v. Patrida, 430 U.S. 482, 494 (1977)).

Though it has suggested it in dicta, the Supreme Court has not specifically held that national origin discrimination is a valid ground for a Batson challenge. See U.S. v. Martinez-Salazar, 528 U.S. 304, 314-15 (2000) ("Under the Equal Protection Clause, a [party] may not

exercise a peremptory challenge to remove a potential juror solely on the basis of the juror's gender, ethnic origin, or race.") (citing, *inter alia*, Hernandez v. New York, 500 U.S. 352, 355 (1991) (determining, but not explaining why, peremptory strikes used against prospective Hispanic jurors is violative of the Equal Protection Clause and Batson)); see also Rico v. Leftridge-Byrd, 340 F.3d 178, 182 (3d Cir. 2003) (commenting that the Supreme Court has not directly addressed the issue of whether national origin discrimination is a valid ground for a Batson challenge). Most recently, in his concurrence in Miller-El v. Dretke, 125 S. Ct. 2317, 2343-44 (2005), Justice Breyer identified national origin as one of several grounds that "undermine[s] [the jury's] representative function" when used as a basis to strike a prospective juror.

The Circuits are not in harmony as to whether jurors' national origin can constitute a "cognizable group" for the purposes of a Batson challenge.[7] Compare Murchu v. U.S., 926 F.2d 50 (1st Cir. 1991) (Irish-Americans not a cognizable racial group for Batson purposes), and U.S. v. Campione, 942 F.2d 429 (7th Cir. 1991) (Italian-Americans not a cognizable racial group for Batson purposes), with Rico, 340 F.3d at 182 (consideration of Italian-Americans as cognizable grouping under Batson not unreasonable).

Moreover, the Second Circuit has not uniformly addressed the issue of whether alleged national origin discrimination can serve as a valid basis for a Batson challenge. In U.S. v. Biaggi,

---

[7] The Supreme Court, has, however firmly held that an Equal Protection violation exists when peremptory strikes are used to discriminate against a prospective juror because of race, Batson, 476 U.S. 79 (1986), and gender, J.E.B. v. Alabama, 511 U.S. 127 (1994). Batson, and its progeny, governs the use of peremptory strikes by both prosecutors and defense counsel, Georgia v. McCollum, 505 U.S. 42 (1992), and also applies to peremptory strikes used in civil cases, Edmonson v. Leesville Concrete Co., 500 U.S. 614 (1991).

853 F.2d 89, 96 (2d Cir. 1989), the Second Circuit affirmed the trial court's determination that the prosecution presented a valid, race-neutral explanation for striking Italian-American prospective jurors *without* addressing the propriety of whether Italian-Americans constituted a cognizable group for the purposes of a Batson challenge. See also Rico, 340 F.3d at 183-84 (noting that many courts sidestep the first inquiry in Batson pertaining to the establishment of a prima facie case of discrimination, and only address the second Batson inquiry as to whether the prosecution has provided a race-neutral explanation for his or her use of peremptory strikes). Yet in Rodriguez v. Schriver, 392 F.3d 505, 511 n.9 (2d Cir. 2005), the Second Circuit explicitly noted that it would *not* address the propriety of the argument that national origin discrimination could serve as the predicate for a Batson challenge, "We need not reach the issue of whether . . . national origin discrimination is a cognizable group for Batson protection . . . ."

Given this uncertainty in the law, and the absence of an unequivocal ruling by the Supreme Court on this issue, I conclude, and respectfully recommend that Your Honor should conclude, that the trial judge's ruling that the Petitioner's counsel failed to establish a prima facie Batson violation based upon alleged national origin discrimination was not contrary to, or an unreasonable application of, federal law. Accordingly, because the Petitioner cannot establish the required showing pursuant to §2254(d)(1), Petitioner's habeas petition on this claim should be denied.

**2. Jury Instruction on After-the-Fact Evidence Regarding Depravity and Wantonness**

In addition to his Batson claim, Petitioner also asserts that the trial judge erred when he failed to instruct the jury properly on the evidence it could consider on the second degree murder charge when determining whether the Petitioner acted in a depraved manner. Pet. at ¶13.

Specifically, Petitioner argued on appeal, as he does here, that his "rights to a fair trial were abrogated when the trial court erroneously admitted into evidence after-the-fact acts and then failed to instruct the jury that those acts were irrelevant to depraved indifference." Pet. at ¶13. In summary fashion, the New York Appellate Division, Second Department, rejected the Petitioner's argument on this claim. People v. Myers, 1 A.D.3d 532, 533 (2d Dept. 2003). On February 26, 2004, Petitioner's application for leave to file an appeal in the New York Court of Appeals was denied. People v. Myers, 1 N.Y.3d 63 (2004).

Petitioner alleges the omission of a jury instruction pertaining to the evidentiary value of after-the-fact acts when determining depravity led to a generic violation of his right to a fundamentally fair trial. In order for the Petitioner to maintain a valid habeas claim, however, the complained-of state court error must rise to a level where a Fourteenth Amendment guarantee is violated. See Cupp v. Naughten, 414 U.S. 141, 146 (1973); U.S. ex rel Smith v. Montayne, 505 F.2d 1355, 1359 (2d Cir. 1974). The error must so infuse the judicial process that the entire proceeding is deemed invalid and in violation of the Fourteenth Amendment; a violation, standing alone, which does not infect the entire proceeding, is not substantial enough to deny the petitioner-defendant his right to a fair trial and entitle him to habeas relief. Cupp, 414 U.S. at 146-47; see also Estelle v. McGuire, 502 U.S.62, 68 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764 (1990) ("federal habeas corpus relief does not lie for errors of state law.")).

In accord with these precepts, the Supreme Court has noted that a petitioner has an "especially heavy" burden when a claim of error consists of an omitted jury instruction, rather than a misstatement of the law. Henderson v. Kibbe, 431 U.S. 145, 155 (1977) ("An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."); Hill v.

U.S., 368 U.S. 424, 428 (1962) (noting that there must be "an omission inconsistent with the rudimentary demands of fair procedure" for a habeas court to grant relief). Moreover, the Second Circuit has explained that the most difficult cases arise when a petitioner, like the Petitioner in this case, claims a violation of the broad notion of a "fair trial." Smith v. Duncan, 441 F.3d 340, 349 (2d Cir. 2005) (quoting and citing Daye v. Attorney General of New York, 696 F.2d 186, 193 (2d Cir. 1982) (en banc)). In such instances, the Second Circuit recommends that a federal habeas court focus on the factual allegations of the Petitioner's complaint and determine if such facts should have alerted the state courts to a meaningful constitutional claim. Id.

In this case, I conclude, and respectfully recommend that Your Honor should conclude, that the Petitioner's claim that the trial judge should have provided the jury with additional guidance when assessing the issue of depravity in the context of second degree murder does not rise to the level of a constitutional due process violation that requires habeas relief. The omitted jury instruction does not deny the Petitioner the "fundamental fairness" he is entitled to under the Fourteenth Amendment's due process clause. See Henderson, 431 U.S. at 155; see also Victory v. Bombard, 570 F.2d 66, 69 n.3 (2d Cir. 1978) (stating that errors in jury instructions often do not supply a valid basis for habeas relief). The absence of one jury instruction, when considered in the context of the entire trial, of all the jury instructions, and of the entire trial record, does not constitute a violation of the Fourteenth Amendment's fundamental fairness guarantee.[8] Cupp, 414 U.S. at 147. In light of the narrow category of violations that has been said to violate "fundamental fairness" - primarily violations of the protections articulated in the Bill of Rights -

---

[8] Because I conclude and recommend that Petitioner has not asserted a violation severe enough to qualify for habeas relief under §2254(d)(1), I do not make a recommendation to Your Honor as to whether the Petitioner's requested jury instruction was in fact required.

generic due process violations scantily support valid habeas claims. See Estelle, 502 U.S. at 73; Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (noting that habeas relief is proper to correct improper admission of evidence only when the admission violates the fundamental concepts of justice).

Because the Petitioner has not alleged a sufficient constitutional violation, I conclude, and respectfully recommend that Your Honor should conclude, that the Petitioner's habeas petition on this claim should be denied.

**3. Jury Instruction Regarding Recklessness**

Lastly, Petitioner argues that "the trial court failed to instruct the jury with sufficient evidence regarding recklessness." Pet. at ¶13. Specifically, Petitioner argues that this omitted jury instruction led the jury to determine that the Petitioner acted recklessly despite an absence of evidence pertaining to the weapon's mechanical condition. Pet. at ¶13. Because Petitioner did not raise this issue in his application for leave to appeal to the New York Court of Appeals, and now, pursuant to New York State law, the time period to appeal to that court has expired, N.Y. CRIM. PRO. LAW §460.10(5)(a), Petitioner has procedurally defaulted on this claim. Petitioner's habeas petition on this claim must therefore be denied.[9]

---

[9] The present situation differs from situations where a defendant makes an expansive appeal to a state appellate court and then must address the situation whether his claims were "fairly presented" to the state court when he or she files for habeas relief. See, e.g., Davis v. Strack, 270 F.3d 111, 122-23 (2d Cir. 2001) (noting that a letter to a state appeals court seeking review of "all issues" raised on appeal in the lower appellate court "fairly presents" all of the issues to the higher state appellate court and thus does not prevent a petitioner-defendant from seeking federal habeas relief on those claims).

(continued from previous page)

In the instant situation, Petitioner's counsel specifically articulated two grounds for appeal and referenced portions of the appellate brief on those two issues only. The third issue

Pursuant to 28 U.S.C. §2254(c), a state prisoner must exhaust "the remedies available in the courts of the State" before being eligible to file a proper habeas petition. In O'Sullivan v. Boerckel, 526 U.S. 838, 840 (1999), the Supreme Court held that in order to be eligible for federal habeas review, a state petitioner must exhaust all state remedies, including filing for discretionary review of his claim in the state's highest court. The Court noted that it was of no consequence that the state's highest court had virtually unbridled discretion when determining whether to grant a prisoner's leave for appeal. Id. at 845. In reaching its decision, the Court relied upon the fact that the state's highest court, at a minimum, had the opportunity to pass upon the prisoner's claim if it so desired under a discretionary review system. Id. The mechanism a court uses to select the claims it wants to hear does not alter the principle that a state's highest court should at least have the ability to pass upon an issue of state law before that issue is raised in a petition for federal habeas corpus relief. Id.

In the present case, the New York Court of Appeals was not given the opportunity to address Petitioner's claim that the trial judge failed to guide sufficiently the jury on the element of recklessness within the second degree murder charge. In accord with New York law, N.Y. CRIM PRO LAW § 460.20, an appellant must seek leave to file an appeal in the New York Court of Appeals. Pursuant to this section, Petitioner, through his appointed counsel, filed the appropriate application for appeal with Chief Judge Judith Kaye. Resp't Mem. Ex. F. Petitioner filed this application within the statutorily mandated thirty day window pursuant to N.Y. CRIM. PRO. LAW §460.10(5)(a). Petitioner's application for leave to appeal, however, only stated two grounds on which he sought the court's review. See Resp't Mem. Ex. F and G. Petitioner sought appeal on

---

raised on appeal to the Appellate Division, Second Department regarding an omitted jury instruction charge as to recklessness was never raised in either of the letters seeking application for leave to appeal to the New York Court of Appeals.

the denial of his Batson claim and on the issue involving the omission of the jury instruction addressing after-the-fact evidence. Resp't Mem. Ex F and G. Both Petitioner's application for leave to file an appeal, and a supplemental letter, failed to mention Petitioner's third habeas claim pertaining to the omission of a jury instruction as to recklessness.

In accord with the Supreme Court's holding in O'Sullivan, because the Petitioner failed to file an application for leave to appeal the New York Appellate Division, Second Department's decision denying his appeal on the recklessness jury instruction, and the time period to file such an application for leave to appeal to the New York Court of Appeals has expired, Petitioner has procedurally defaulted on this claim. 526 U.S. at 848; see also Smith v. Duncan, 411 F.3d 340, 345 (2d Cir. 2005) (failure to apply for leave to appeal to New York Court of Appeals bars petitioner from raising claim in federal habeas petition); Galdamez v. Keane, 394 F.3d 68, 72 (2d Cir. 2005) (same).

Because of this procedural bar, this Court cannot review Petitioner's defaulted claim unless the Petitioner can demonstrate cause and prejudice for his procedural default, or actual innocence. See Coleman v. Thompson, 501 U.S. 722, 750 (1991) (noting that a petitioner can overcome a procedural default by a showing of cause and prejudice); Teague v. Lane, 489 U.S. 288, 298 (1989) (same); Murray v. Carrier, 477 U.S. 478, 496 (1986) (petitioner can overcome procedural default by showing of actual innocence in extraordinary circumstances). Because Petitioner does not attempt to establish either of these prongs necessary for this Court to consider Petitioner's habeas petition in light of his procedural default, I conclude, and respectfully recommend that Your Honor should conclude, that Petitioner's habeas petition be denied.

## CONCLUSION

For the reasons stated above, I conclude, and respectfully recommend that Your Honor

should conclude, that the instant habeas petition should be denied *in toto*.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(e), or a total of thirteen (13) working days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Stephen C. Robinson, at the United States District Court, Southern District of New York, United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. Requests for extensions of time to file objections must be made to Judge Robinson

Dated: January 20, 2006
White Plains, NY

Respectfully submitted,

__________________________
Lisa Margaret Smith
Chief Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Stephen C. Robinson, U.S.D.J.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(e), or a total of thirteen (13) working days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Stephen C. Robinson, at the United States District Court, Southern District of New York, United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. Requests for extensions of time to file objections must be made to Judge Robinson

Dated: January 20, 2006
       White Plains, NY

                              Respectfully submitted,

                              Lisa Margaret Smith
                              Chief Magistrate Judge
                              Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Stephen C. Robinson, U.S.D.J.